[Civ. No. 35387. Second Dist., Div. One. June 9, 1970.]

ETHEL BENOR, Plaintiff and Respondent, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Appellant.

## COUNSEL

Thomas C. Lynch, Attorney General, and Edward Duddy, Deputy Attorney General, for Defendant and Appellant.

Hillel Chodos for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—Appellant, State Board of Medical Examiners, has appealed from a judgment of the superior court mandating it to issue a license to respondent to engage in the practice of psychology. We affirm the judgment.

### Statutory Scheme

Prior to November 8, 1967, the law of California did not prohibit the practice of psychology without a license. The law did prohibit any person from representing himself as a psychologist unless he was certified as provided in the then operative sections of the Business and Professions Code. (Former § 2930.) A qualified applicant obtained certification by passing an examination. (Former §§ 2942-2946.) An applicant was deemed qualified for the examination if he satisfied the following requirements: (1) was at least 21 years of age; (2) was of good moral character; (3) was a citizen of the United States or had signified his intention to become a citizen; (4) had engaged for at least one year in supervised professional experience; (5) was not found to have engaged in unethical practices; (6) had not failed an examination within the preceding six months; and (7) had received a doctorate in psychology or educational psychology or had equivalent training,

provided the degree or training was obtained from the University of California, Stanford University, the University of Southern California, or an institution approved as offering a comparable program. (Former § 2941.) The former statute contained an alternative to the requirement that an applicant for certification examination have graduated from one of the named universities or "an institution offering a comparable program." Former section 2941.5 provided that a person who passed a "junior examination" with a grade of at least 75 percent and otherwise satisfied the statutory prerequisites was eligible to take the certification examination. That same section specified the qualifications necessary for eligibility to take the junior examination. Those were essentially the same as those required for the certification examination excluding the educational prerequisite. In lieu of that requirement, the applicant for the junior examination must have graduated from a state chartered school or college which required not less than 3,200 classroom hours with at least 1,200 in psychological subjects. Former section 2941.5, which provided for the junior examination, ends with the following sentence: "This section shall expire October 1, 1965."

Effective November 8, 1967, the California Legislature enacted a new chapter 6.6 (§§ 2900-2986) of the Business and Professions Code. The new chapter repealed the prior provisions relating to certification of psychologists. It now prohibits the practice of psychology without a license and provides a licensing procedure which includes an examination. The 1967 legislation, however, contains a grandfather clause. Section 2906 provides: "The committee shall waive the examination and the board shall grant a license to any of the following persons: (a) All persons holding a valid certificate . . . (b) All persons who shall have applied in writing to the committee within 30 days after the effective date of this chapter and who shall have met the following qualifications: (1) Is a resident of this state at the time of application and has been a resident for at least two years prior to the date of application. (2) Has met the requirements of subdivisions (a), (b) and (c) of Section 2914 [at least 21 years of age, of good moral character, a citizen of the United States or a person who has declared his intention to become a citizen]. (3) Meets at least one of the following additional qualifications: (i) Would, prior to the date of application, have qualified for the written junior examination given under the provisions of Chapter 6.6 (commencing with Section 2900) of Division 2 of the Business and Professions Code, and is a graduate of an accredited university or college or a state chartered school or college, has engaged for at least one year in supervised professional training under a certified psychologist, is not found by the committee to be engaged in unethical practices as set forth in Section 2960, provided that the academic program of the institution at which the training was taken consisted of not less than 3,200 classroom hours with at

least 1,200 such classroom hours in psychological subjects, and is now engaged in active practice in the field of psychology or psychotherapy."

## Respondent's Qualifications

Within 30 days after the effective date of the 1967 act, respondent applied for a license as a psychologist. As of the effective date of the licensing statute, she was a resident of California and had been one for over two years; she was over 21 years of age; she was of good moral character and a citizen of the United States. Respondent had graduated from New York University and had been awarded a master's degree by that institution in 1945. Prior to her application for a license, she had engaged for at least one year in supervised professional training under a certified psychologist, had not been found by the committee to be engaged in (and had not engaged in) unethical practices as set forth in section 2960 of the Business and Professions Code, and was engaged in the active practice of psychology.

Respondent, however, did not complete her training in a state-chartered institution including not less than 3,200 classroom hours with at least 1,200 classroom hours in psychological subjects until October 13, 1967. On that date, she was awarded a Ph.D. in psychology by the Institute for Social and Psychological Research. Respondent thus completed the requirements for qualification to take the junior examination provided by the former law prior to the effective date of the current licensing statute but after October 1, 1965, the termination date of the former statute authorizing the junior examination.

## Issue on Appeal

Appellant refused respondent's application for a license without examination. Respondent then filed her petition for writ of mandate in the superior court. The court, after hearing the matter on stipulated facts, gave judgment for respondent and ordered appellant to issue the license. Appellant perfected its appeal to this court. Appellant's only contention is that respondent is not a person who "Would, prior to the date of [her] application, have qualified for the written junior examination given under the provisions of [former] Chapter 6.6 of the Business and Professions Code." That contention admits that respondent met all the requirements for the examination prior to the effective date of the current act and is based solely on the ground that respondent did not finally qualify for the junior examination until after October 1, 1965, the terminal date of the statute providing for that examination.

## Legislative History of Grandfather Clause

The current legislation requiring the licensing of psychologists (Bus. & Prof. Code, §§ 2900-2986) was first introduced in the Legislature as Senate Bill 1158 on April 11, 1967. As first drafted, the legislation exempted from the requirement of an examination only persons who had been certified as psychologists prior to the effective date of the law. The bill was amended in the Senate on June 2, 1967, to exempt an applicant who established that he ". . . has prior to the date of application, qualified for, taken and received a passing grade on the written examination for certification. . . ." On July 21, 1967, the bill was further amended in the Assembly. The amendment changed the pertinent exemption from the licensing examination to read: "has prior to the date of application, qualified for and taken the written Junior Examination. . . ."

The Assembly again amended the bill on August 2, 1967, to substitute the present language of exemption for that previously in the bill. The August 2 amendment states that the exemption from the licensing examination is available to a person who "would, prior to the date of application, have qualified for the written junior examination given under the provisions of Chapter 6.6. . . ." The August 2 version of the bill is that enacted into law by the Legislature.

## Interpretation of Statute

The governing statute as enacted is open to two conflicting interpretations. It may mean, as contended by appellant, that the exemption is available only to those persons who met the qualifications for the junior examination during the time it was being given pursuant to the former statute, i.e., until October 1, 1965. It may also mean, as contended by respondent, that the exemption is available to those persons who met the qualifications for taking the junior examination at any time up to the time for application for exemption, 30 days after the effective date of the new statute.

Neither interpretation satisfies the classic rules of statutory construction. The meaning asserted by respondent requires that many of the detailed qualifications provided in the statute, other than those relating to qualification for the junior examination, be treated as repetitious of identical requirements which must have been met to qualify for that junior examination. The meaning asserted by appellant requires that the words "prior to the date of application" be ignored and the section read as if those words were "prior to October 1, 1965."

Absent a single meaning of the statute apparent from its face, we are required to give it an interpretation based upon the legislative intent

with which it was passed. We seek that intent from the legislative history of the bill. Our Rosetta Stone is the Assembly amendment of July 21, 1967, which preceded the August 2 amendment which framed the statute in its final form. The exemption in the July 21 version was phrased in the indicative form, "has qualified for and taken the written junior examination." It contemplated an actual state of fact. The July 21 version also includes many other qualifications for exemption from licensing which are totally repetitious of those that qualified a person to have taken the junior examination which he must have passed to obtain the exemption.

The change from the indicative in the July 21 version of the bill to the subjunctive mood in the legislation as passed, i.e., "would, . . . have qualified for the written junior examination" is very significant. It discloses a legislative intention to include within the exemption from the licensing examination those persons who would have been qualified to take the former junior examination but for some fact. The fact most likely to have attracted the attention of the Legislature was the inability of persons to take the junior examination after October 1, 1965, because the examination was no longer available. The July 21 version also contains a specification of qualification for licensing without examination which is repetitious of the qualifications for taking the junior examination. It mitigates whatever inhibition there may be upon interpreting the present law in a fashion which renders portions of it repetitive.

Legislative history thus leads us to the conclusion that the phrase "would, prior to the date of application, have qualified for the written junior examination," as used in current section 2906 of the Business and Professions Code, must be interpreted to include all persons who, within 30 days of the effective date of the statute, satisfied the qualifications formerly required as a prerequisite to taking the junior examination regardless of whether those qualifications were satisfied before or after October 1, 1965. That interpretation gives meaning to the date specified in the pertinent portion of section 2906, "prior to the date of application." While the interpretation renders portions of the statute repetitious, any defect in that regard is explained by the presence of identical language in a prior draft of the legislation in a context in which it was of necessity repetitive. The Legislature was entitled to spell out qualifications in repetitive detail if it deemed it necessary to do so. It apparently did.

Appellant argues that the change from the July 21 version to the adopted wording of the legislation was intended to cover only those persons who, on October 1, 1965, met the statutory requirements prerequisite to the junior examination but who were not in fact "qualified" because they did not apply to take it. That interpretation is a strained one, and one which

does violence to the date specified in section 2906. It also is counter to the context in which the word "qualification" is used in the prior statute. "Qualification" as there used refers to the conditions prerequisite to applying to take the junior examination without regard to the fact of application itself. (Former §§ 2941, 2941.5, Bus. & Prof. Code.)

*Conclusion*

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied July 7, 1970, and appellant's petition for a hearing by the Supreme Court was denied August 5, 1970.