[Crim. No. 17308. First Dist., Div. Three. Mar. 22, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WESLEY RODGERS, Defendant and Appellant.

COUNSEL

Paul N. Halyonik, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon and Peter R. Silten, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FEINBERG, J.—The sole issue on this appeal is whether appellant is entitled to credit upon his sentence for 78 days which he spent in Delancey Street Foundation as a condition of probation. We hold that Penal Code section 2900.5 mandates that such credit be given.

Appellant entered a plea of guilty to violation of Penal Code section 12021. On April 14, 1976, the court granted him three years probation and ordered that he maintain residence at Delancey Street Foundation for at least one year, or upon release by the adult probation officer. On August 19, 1976, the probation officer filed a petition alleging that appellant had violated the conditions of probation in that he had failed to remain at Delancey Street and had failed to report to the department when instructed to do so. The court revoked probation and issued a bench warrant. On January 19, 1977, the court pronounced judgment and sentenced appellant to prison. We affirmed the judgment on appeal. On August 16, 1977, appellant petitioned the trial court for credit upon his sentence for time served at Delancey Street. The motion was argued and denied. This appeal followed. (See Pen. Code, § 1237, subd. 2.)

The facts of this case are undisputed. Appellant was admitted to probation on condition that he enter Delancey Street Foundation and that he maintain residence there for at least one year or until release by the adult probation officer. Appellant was transferred to Delancey Street Foundation on May 11, 1976, and he remained there for 78 days, until July 28, 1976.

Penal Code section 2900.5 provides in relevant part: "In all felony . . . convictions . . . when the defendant has been *in custody, including but not limited to any time spent in a* jail, camp, work furlough facility, *halfway house, rehabilitation facility,* hospital, prison, *or similar institution,* all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, shall be credited upon his sentence . . . ." (Italics added.)

*The Nature of Delancey Street Foundation*

At the hearing below the district attorney stipulated that Delancey Street Foundation is a "halfway house, rehabilitation facility . . . or similar institution" within the meaning of section 2900.5. He argued, however, and the trial court held, that appellant was not "in custody" within the meaning of the statute when he spent 78 days there.

All of the following facts regarding Delancey Street were stipulated to in the trial court. A person may be placed there as a condition of probation, and no person will be accepted by the foundation unless he agrees to the condition of probation placing him there. A person accepted by Delancey Street must agree to follow its rules and regulations. He must reside at Delancey Street. Newcomers may not leave the property unescorted for six months. During the first 12 months of residence there is a flat prohibition against meeting with anyone outside the foundation, including spouses and children.

A person who fails to follow the rules of Delancey Street will be asked to leave. If a person leaves before his commitment is up, or if he should be asked to leave, Delancey Street will immediately notify the proper authorities.

Delancey Street is not enclosed by locked fences; the doors are not locked during the day; there are no bars on the windows; there are no armed or unarmed guards. A person committed to Delancey Street may physically leave, because it is the foundation's policy that no one will be forced to remain there against his will.

Delancey Street Foundation is a residential treatment program which offers both group and individual counseling together with vocational and remedial education and training for drug abusers, alcoholics, ex-convicts and persons with general character disorders.

Delancey Street offers a live-in, self-help program which provides a supportive environment, and is based on work and education. The program lasts two years, and anyone wishing to enter the program must be willing to commit himself for that period. When men enter the program their heads are shaved; women have their makeup and jewelry removed. This is the beginning of a process whereby the person's self-image is changed. Participants attend a three-hour encounter group session three times each week; the groups are based upon what is known as "attack therapy."

The program offers varied educational and vocational instruction, the latter through use of six foundation-owned businesses. The foundation also has a credit union from which graduates may borrow money to get started in the community.

The foundation is willing to provide the adult probation department with progress reports as well as to notify the department in case the probationer leaves or is asked to leave. Generally persons asked to leave may not reenter for 30 days.

A January 1977 evaluation of Delancey Street by the Adult Probation Department of Santa Clara County concluded in part: "This is seen as an excellent program for someone who has not been able or would not be able to respond to a less intense or less structured residential treatment program."

*Application of Section 2900.5*

As originally enacted in 1971, section 2900.5 could not have been read as giving credit for time spent on probation in a facility such as Delancey Street Foundation, because it provided such credit only for time served in custody in any jail. (Stats. 1971, ch. 1732, § 2, p. 3686.) However, a 1976 amendment broadened the scope of the statute so that now credit must be given for time spent "in custody including but not limited to any time spent in a . . . halfway house, rehabilitation facility . . . or similar institution . . . ." (Stats. 1976, ch. 1045, § 2, p. 4665.)

A statute which has a " 'single meaning . . . apparent on its face' " requires no interpretation. (See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Benor* v. *Board of Medical Examiners* (1970) 8 Cal.App.3d 542, 546 [87

Cal.Rptr. 415].) ▉ The meaning of "halfway house, rehabilitation facility . . . or similar institution" apparently was considered sufficiently apparent on the face of the statute for purposes of this case, since the People stipulated below that Delancey Street Foundation was such a facility within the meaning of the statute. However, the meaning of "in custody" was and is in dispute.

We find that the words "in custody" have a single meaning and are not ambiguous in the context of this statute. The dictionary defines "custody" as follows: "1a: the act or duty of guarding and preserving (as by a duly authorized person or agency): SAFEKEEPING (the Serials Division has [custody] of newspapers . . .) b: protection, care, maintenance, and tuition: GUARDIANSHIP (orphans in the [custody] of their uncle) 2: judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it: imprisonment or durance of persons or charge of things (a man held in police [custody]) (a suspect in protective [custody]) . . . ." (Webster's Third New Internat. Dict. (1965) p. 559.)

Thus it is clear that the word "custody" connotes a concept quite different from incarceration or imprisonment. Further enlightenment regarding the plain meaning of "custody" in the context of criminal law may be drawn by analogy to use of that concept in habeas corpus proceedings. Traditionally the writ served the function of releasing a person from actual restraint, and early cases would only consider granting it to one in actual physical detention. (Witkin, Cal. Criminal Procedure, § 794, pp. 766-767, and cases cited therein.) Now, of course, the concept of "custody" has been expanded, so that anyone subject to restraints not shared by the *public generally*" may be heard to seek the writ, for example, persons free on bail, on their own recognizance, on parole, on probation, and the like. (Witkin, *supra; In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179]; *In re Hochberg* (1970) 2 Cal.3d 870, 874, fn. 3 [87 Cal.Rptr. 681, 471 P.2d 1].)

There can be no question that someone in Delancey Street Foundation is subjected to extreme restraints not shared by the public generally, and, for that matter, some of which are not shared even by persons in jail or otherwise incarcerated. Two examples taken from the stipulated facts set forth above are: the one-year prohibition against any communication with spouse and children, and the six-month prohibition against leaving the facility unescorted. We hold, therefore, that on its face the statute

requires that appellant be given credit for time spent in Delancey Street Foundation.

■ Assuming arguendo that the phrase "in custody" in the context of section 2900.5 is ambiguous, then "we must rely on a cardinal principle of statutory construction: that absent 'a single meaning of the statute apparent on its face, we are required to give it an interpretation based upon the legislative intent with which it was passed.'" (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 256; *Benor* v. *Board of Medical Examiners, supra,* 8 Cal.App.3d at pp. 546-547.)

Evidence of legislative intent was presented to the trial court in the form of a letter from the author of the bill. ■ While courts are properly reluctant to rely on statements of individual legislators as an expression of intent of the entire body (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 258), the author's statement of intent, even though noncontemporaneous, is admissible in evidence and "constitutes some indication at least of the probable intent of the Legislature." (*Campbell* v. *Board of Dental Examiners* (1975) 53 Cal.App.3d 283, 286, fn. 3 [125 Cal.Rptr. 694].)

■ When asked to explain the intent behind the 1976 amendment, State Senator Alan Sieroty, author of both the original statute and the amendment, explained as follows:

"In order to put this amendment into proper perspective, you should remember that we made another significant change in 2900.5. It requires that all time in custody be credited to the actual period of confinement whether it be a sentence, as a condition of probation or a parole date established by a parole board. [See Pen. Code, § 2900.5, subd. (c).]

"With this in mind, the above language was added to make it clear that *any restriction on a person's liberty* normally imposed by a court as a condition of probation *would be credited* toward a future period of confinement, if any. *This language was generally intended for live-in drug rehabilitation programs of extended duration, whether public or private.*" (Letter of Aug. 8, 1977, from Senator Sieroty to Peter Silten, deputy state public defender, admitted into evidence on Aug. 16, 1977, as defendant's exhibit A. [Italics added.])

We conclude that the legislative history of section 2900.5 compels the conclusion that appellant should have been given the credit which he sought.

We reach our decision with some reluctance. It is not difficult to foresee that trial courts will be required to hold hearings on whether a particular private facility falls within or without the purview of section 2900.5, creating a further demand on the time of already burdened criminal trial courts. Nor is it difficult to foresee that there may be changes in sentencing practices unanticipated by the Legislature. But these considerations are properly addressed to the Legislature, not to the courts.

### Disposition

Because the trial court had before it all of the relevant facts (to which both parties stipulated), the question before us is one of law. It is therefore unnecessary to remand the matter to the trial court for an evidentiary hearing. (Cf. *In re Wolfenbarger* (1977) 76 Cal.App.3d 201 [142 Cal.Rptr. 745].)

The order is reversed. The Community Release Board is directed to credit 78 days for time spent in Delancey Street Foundation as a condition of probation upon appellant's sentence, including any period of imprisonment prior to release on parole and any period of imprisonment and parole prior to discharge. (Pen. Code, § 2900.5, subd. (c).)

Scott, Acting P. J., and Abbe, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.