[Civ. No. 53504. First Dist., Div. Two. Aug. 26, 1982.]

In re DEBRA S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DEBRA S., Defendant and Appellant.

**COUNSEL**

Judith Bried, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ROUSE, J.—Debra S., a minor, appeals from an order declaring her a ward of the court and committing her to the California Youth Authority (CYA) for a period of three years and two months. We affirm the order of commitment.

On June 24, 1981, a juvenile court petition was filed alleging that Debra S. came within the provisions of section 602 of the Welfare and Institutions Code in that she had (1) violated section 594, subdivision (a), of the Penal Code, a misdemeanor, by breaking three household

windows belonging to another, causing damage in an amount less than $1,000; and (2) violated section 417, subdivision (a), of the Penal Code, a misdemeanor, by unlawfully drawing and exhibiting a knife. On the same date, in accordance with section 602 of the Welfare and Institutions Code, a supplemental petition was filed alleging Debra to be a ward of the court.

On the following day, June 25, 1981, Charles Rand, a probation officer, requested that Debra be detained pursuant to sections 320 and 636 of the Welfare and Institutions Code. The court ordered the detention for a period not to exceed 15 days and the matter was continued until July 2, 1981.

On July 2, 1981, the parties, through their respective counsel, stipulated that Debra's case would be heard by Franklin Gentes, a temporary judge. The matter was continued until July 22, 1981.

The clerk's transcript shows that on July 22, 1981, the jurisdictional hearing was held. The court found that, in the presence of counsel, Debra had been advised of her legal rights and that she clearly understood and intelligently waived those rights. Further, the court determined that Debra admitted the truth of the allegations of count two and that her admission was freely and voluntarily given. On motion of the assistant district attorney, count one was then dismissed in the interest of justice. Count two was sustained and Debra was ordered to remain in custody pending disposition. There is no court reporter's transcript of this proceeding in the record on appeal.

At the dispositional hearing held on August 4, 1981, the court ordered Debra committed to the CYA for a period not to exceed three years and two months.

■   Debra's first contention on appeal is that the juvenile court abused its discretion in committing her to the CYA without first trying the less restrictive alternative of placement in a local residential treatment facility.

The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing the

minor to the CYA. ■ An appellate court must indulge in all reasonable inferences in support of the findings of the juvenile court, and these findings will not be disturbed on appeal when there is substantial evidence to support them. (*In re James H.* (1981) 121 Cal.App.3d 268, 273 [175 Cal.Rptr. 141].)

■ Since juvenile commitment proceedings are designed for the purposes of rehabilitation and treatment, not punishment, a CYA commitment must be supported by a determination, based upon substantial evidence in the record, of probable benefit to the minor. (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].) ■ The Juvenile Court Law contemplates a progressively restrictive and punitive series of disposition orders, but lesser remedies may nevertheless be rejected if supported by evidence on the record of their inappropriateness necessitating use of the CYA. (*In re Michael R.* (1977) 73 Cal.App.3d 327, 336-337 [140 Cal.Rptr. 716].) Thus, the circumstances of a particular case may well suggest the desirability of a CYA commitment despite the availability of such alternative dispositions as placement in a county camp or ranch. (*In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 577 P.2d 177].)

■ In this instance, the evidence supports Debra's commitment to the CYA. The probation report, which the court considered, revealed that earlier petitions which had been sustained against Debra had alleged petty theft and two counts of grand theft; that Debra had previously been committed to the CYA, although such commitment had then been stayed; that Debra was on probation at the time of the instant offense; that Debra had engaged in progressively more assaultive and insubordinate behavior while in juvenile hall and at school; that Debra was a chronic truant from school; that the local screening committee had recommended that Debra be committed to the CYA; that Debra's parents were unable to effectively supervise her; and that Debra was in need of remedial education and therapy. Based on this report, as well as the reports of the clinical psychologist and the social worker, the court stated, "it's clear to me she needs a custodial setting. I don't believe Fred Finch [Residential Treatment Youth Center] is the solution to the problem." Having rejected the "lesser remedy" of placement in a local residential facility as inappropriate, the court responded to concern for the minor's needs for therapy and special education by explaining that "What often happens, in these cases, the California

Youth Authority makes the evaluation and then almost immediately paroles the child to a private facility."[1]

Thus, it is clear from the record that the CYA commitment was made only after a consideration of the alternatives and after the court had reached the conclusion that such commitment would be in Debra's best interest and of probable benefit to her.

Debra next complains of the fact that there was no court reporter at the jurisdictional hearing and raises the issue of whether she "voluntarily" admitted the violation of section 417 of the Penal Code.

Debra correctly points out that, under section 677 of the Welfare and Institutions Code, she is entitled to a transcript of proceedings at the jurisdictional hearing. (*In re Stephen B.* (1979) 25 Cal.3d 1, 7-8 [157 Cal.Rptr. 510, 598 P.2d 480].) She further notes that under rule 39(c)(2) of the California Rules of Court, the normal record on appeal includes the reporter's transcript of the oral proceedings at such hearing. However, section 677 of the Welfare and Institutions Code also provides that a proceeding will be transcribed by the court reporter "if directed by the judge, or requested by the person on whose behalf the petition was brought, or by his parent or legal guardian, or the attorneys of such persons . . . ."

In response to an inquiry by this court, the chief deputy clerk of the superior court for the City and County of San Francisco has certified to this court that the proceedings which took place at the jurisdictional hearing held on July 22, 1981, were not transcribed by a reporter. Since it is evident that Debra's trial counsel chose not to request that a reporter be present at such hearing, appellate review, of necessity, is limited to the clerk's transcript, which must be presumed correct and which indicates that Debra's admission of the violation of section 417 of the Penal Code was both informed and voluntary.

---

[1]On the date when Debra's dispositional hearing was held (Aug. 4, 1981), section 736 of the Welfare and Institutions Code provided that "(a) The Youth Authority shall accept a person committed to it . . . if it believes that the person can be materially benefited by its reformatory and educational discipline, and if it has adequate facilities to provide such care. . . . [¶] (b) The Youth Authority shall also accept a person committed to it . . . provided that the Director of the Youth Authority certifies that staff and institutions are available (a) if he is a borderline psychiatric or borderline mentally deficient case, . . . or (c) if he suffers from a primary behavior disorder."

■ Debra claims that her detention pending the jurisdictional hearing was invalid insofar as it exceeded the statutory 15-day limit. She points out that detention pending a jurisdictional hearing may not exceed 15 judicial days, as provided in sections 636 and 657 of the Welfare and Institutions Code and rule 1351(b) and (d) of the California Rules of Court. However, section 682, subdivision (b), of the Welfare and Institutions Code provides that "In any case in which the minor is represented by counsel and no objection is made to an order continuing any such hearing beyond the time limit within which the hearing is otherwise required to be held, the absence of such an objection shall be deemed a consent to the continuance." Rule 1352(b) of the California Rules of Court contains a similar provision.

Here, the record shows that Debra was taken into custody on June 23, 1981. On July 2, 1981, Debra's counsel stipulated that the matter would be heard by a temporary judge, and the matter was continued until July 22, 1981. The record reflects no objection by Debra's counsel to the fact that July 22 was beyond the statutory time limit. In the absence of such an objection, it must be assumed that Debra consented to the continuance and has waived her right to argue the point on appeal.

■ Debra next contends that she should have received credit against her commitment to the CYA for the time that she was on probation.[2] As legal support for her claim, she relies entirely on section 2900.5 of the Penal Code,[3] as that statute is interpreted in *People* v. *Rodgers* (1978) 79 Cal.App.3d 26 [144 Cal.Rptr. 602]. In that case, the court focused on the meaning of "custody" to determine whether an individual was entitled to credit upon his sentence for time spent in a private drug rehabilitation facility as a condition of probation. In applying section 2900.5, the court acknowledged that the concept of custody was quite different from incarceration and included anyone subject to restraints not shared by the public generally.

---

[2] She did receive credit for the 42 days which she spent in juvenile hall prior to her dispositional hearing.

[3] Section 2900.5, subdivision (a), of the Penal Code, provides, in part, "In all felony ... convictions ... when the defendant has been in custody, including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody ... shall be credited upon his term of imprisonment." When *People* v. *Rodgers, supra,* was decided, juvenile detention facility was not included in the above list of institutions.

Debra argues that "the stigma of being placed on probation may be more of a 'confinement' than an actual 'detention disposition'" and thus "'custody' does exist during a probationary period." We disagree.

The facts of this case differ significantly from those in *People* v. *Rodgers, supra*, 79 Cal.App.3d 26. First, the conditions placed on the minor were much less restrictive. While Debra was living at home, she was ordered to attend school daily, participate in individual and family therapy, participate in an after-school program, apprise her mother of her whereabouts 24 hours per day, and observe a 6 p.m. curfew. In contrast, the *Rodgers* court found that the appellant, who was living in a private facility, was "subjected to extreme restraints ... some of which [were] not shared even by persons in jail ...." (P. 31.) Second, the *Rodgers* court examined the legislative history of section 2900.5 and came to the conclusion that the language was generally intended for live-in drug rehabilitation programs of extended duration, whether public or private. (P. 32.) Debra was not in such a program. We conclude that her probationary period does not constitute "custody" within the meaning of section 2900.5, hence such period may not be credited against her commitment to the CYA.

■   Debra asserts that the inclusion of improper material in the probation officer's report was prejudicial to her right to a fair disposition hearing.

In *People* v. *Medina* (1978) 78 Cal.App.3d 1000, 1007 [144 Cal.Rptr. 581], it was held that unless the record shows an objection to allegedly improper entries in a probation report and an erroneous ruling thereon, the issue may not be raised on appeal. Otherwise, the court reasoned, "the determination of the factors which moved a trial court to sentence as it did necessarily rests—at least to some degree—on speculation." Here Debra's counsel neither objected to nor attempted to rebut the information in the report. In fact, he referred to the report as support for his belief that "She does need help and assistance ...." Therefore, the issue is not available to Debra on appeal.

Finally, Debra contends that her right to equal protection of the laws was violated by the CYA's failure to maintain facilities for females in northern California. Her argument is based upon a factual assertion

which is without support in the record, hence it must be rejected. (*Davis v. Thayer* (1980) 113 Cal.App.3d 892, 912 [170 Cal.Rptr. 328].)

The order is affirmed.

Grodin, P. J., and Smith, J., concurred.

A petition for a rehearing was denied September 24, 1982, and the opinion was modified to read as printed above.