Filed 6/17/14  P. v. Rush CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059518 |
| v. | (Super.Ct.No. RIF1201987) |
| RANDY LEE RUSH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.

Affirmed as modified.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Randy Lee Rush appeals from an order denying his motion for additional custody credits under Penal Code section 2900.5.[1]  For the reasons explained below, we will affirm the order with a modification.

I

FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 2012, defendant stole a cellular telephone from a woman over 65 years old.

On May 24, 2012, pursuant to a plea agreement, defendant pled guilty to theft of an elderly person (§ 368, subd. (d); count 1) and petty theft with a prior (§§ 666/484; count 4).  Defendant also admitted that he had served a prior prison term (§ 667.5, subd. (b)).  In return, the remaining allegations were dismissed and defendant's five-year total sentence was suspended on various terms and conditions of probation, including serving 180 days in county jail and completing a one-year program at the Hacienda Christian Life Live-in Program (Hacienda).  The court awarded defendant a total of 104 days of presentence custody credits with the balance to be suspended upon defendant reporting to Hacienda the next day.

On September 23, 2012, defendant returned to Hacienda from a weekend pass and admitted to using methamphetamine.  Defendant was subsequently terminated from Hacienda.

---

[1]  All future statutory references are to the Penal Code unless otherwise stated.

On December 27, 2012, a petition to revoke defendant's probation was filed based on his termination from Hacienda. The trial court summarily revoked defendant's probation and issued a bench warrant for his arrest.

Defendant was brought before the court on February 5, 2013, and a probation revocation hearing was set for February 19, 2013.

At the February 19, 2013 probation revocation hearing, the trial court found that defendant had violated the terms and conditions of his probation and formally revoked defendant's probation. The trial court thereafter sentenced defendant to the suspended five-year prison sentence and awarded defendant 141 days (71 days for actual days, plus 70 days for conduct) of presentence credits.

On June 3, 2013, defense counsel orally moved for an additional 122 days of actual credit for the time defendant participated at Hacienda. The trial court denied the motion.

On June 27, 2013, defense counsel filed a written motion requesting that defendant be awarded an additional 122 days of actual credit for the time defendant participated in Hacienda. The motion included Hacienda's rule book.

Following a hearing on August 16, 2013, the trial court denied the motion, finding Hacienda was not a "lock-down" facility and defendant was "free to leave." The trial court also stated: "The Court does not believe that it is beneficial to give a person custody credits. If I agreed to that, I make a finding at the time of sentencing and I tell the defendant. The defendants in my court are told actually quite the opposite. They don't get any custody credits. It's part of treatment. It's to avoid state prison for most of

3

them. And so that is my ruling. He is not entitled to that. It does not meet the second criterion. It is not custodial. So now you have a record for appeal."

## II

## DISCUSSION

Defendant argues that the trial court erred by denying his request for presentence custody credit for the time he spent in a required residential treatment program and that he was entitled to the credit under section 2900.5. Defendant also argues that the trial court erred by stating the court had told defendant he would not be receiving any custody credits for the time he spent in the treatment program when the record does not support such a statement.

The People respond that the trial court properly denied defendant's request for additional custody credits for the time he spent in the treatment program because Hacienda was not custodial. The People acknowledge that defendant did not knowingly and intelligently waive his right to custody credits for the time he spent at Hacienda.

Section 2900.5, subdivision (a), provides: "In all felony . . . convictions . . . when the defendant has been in custody, including, but not limited to, any time spent in a jail, . . . rehabilitation facility, . . . or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order . . . shall be credited upon his or her term of imprisonment . . . ."

Time spent in a private residential treatment program as a condition of probation qualifies for presentence custody credit under section 2900.5, subdivision (a). (*People v. Jeffrey* (2004) 33 Cal.4th 312, 318 (*Jeffrey*); *People v. Johnson* (2002) 28 Cal.4th 1050,

1053 (*Johnson*); *People v. Davenport* (2007) 148 Cal.App.4th 240, 245; *People v. Thurman* (2005) 125 Cal.App.4th 1453, 1460.) Although a defendant can be required to waive credit he would otherwise earn in residential drug treatment as a condition of being placed on probation (*Johnson*, at pp. 1054-1055; *Jeffrey*, at p. 315), it is undisputed that defendant made no such waiver in this case.

The question before us is whether the time defendant spent in Hacienda subjected defendant to sufficient restraints on his liberty so as to constitute "custody" within the meaning of section 2900.5. (*People v. Ambrose* (1992) 7 Cal.App.4th 1917, 1921 (*Ambrose*).) The question of whether the restraints at a particular facility are so restrictive as to constitute custody is a factual issue. (*Id.* at p. 1922.) The trial court found that none of the time spent by defendant in Hacienda was custodial. We review a trial court's factual finding on whether a treatment facility is custodial within the meaning of section 2900.5 for substantial evidence. (*People v. Darnell* (1990) 224 Cal.App.3d 806, 809.)

As the court stated in *Ambrose*, *supra*, 7 Cal.App.4th 1917, "[t]he term 'in custody' as used in section 2900.5, subdivision (a) has never been precisely defined. . . . 'It is clear from the words of the statute and from judicial decisions that, for purposes of credit, "custody" is to be broadly defined. [Citations.] . . . The courts which have considered the question generally focus on such factors as the extent freedom of movement is restricted, regulations governing visitation, rules regarding personal appearance, and the rigidity of the program's daily schedule. [Citation.] [¶] While no hard and fast rule can be derived from the cases, the concept of custody generally

5

connotes a facility rather than a home. It includes some aspect of regulation of behavior. It also includes supervision in a structured life style.'" (*Ambrose*, at pp.1921-1922, quoting *People v. Reinertson* (1986) 178 Cal.App.3d 320, 326-327.)

The pertinent case law counsels that a restrictive, live-in rehabilitation facility may qualify for custody credit. In *People v. Rodgers* (1978) 79 Cal.App.3d 26 (*Rodgers*), the court held that Delancey Street was custodial for credit purposes. The court noted that newcomers to Delancey Street were prohibited from leaving the property unescorted for six months; that during the first 12 months, residents could not meet anyone from the outside, including spouses and children; and that men entering the program had their heads shaved and women had their makeup and jewelry removed. The program included counseling, vocational and remedial education, and encounter groups. If a person were to leave or be asked to leave before his or her two-year commitment was up, Delancey Street would notify the authorities. (*Id*. at pp. 29-30.) Thus, even though one was free to leave in the sense that there were no locks on the doors or guards at the gate, residents there were "subjected to extreme restraints not shared by the public generally, and, for that matter, some of which are not shared even by persons in jail or otherwise incarcerated." (*Id*. at p. 31.)

In *People v. Pottorff* (1996) 47 Cal.App.4th 1709 (*Pottorff*), the trial court permitted the defendant's release on bail on the condition that he be confined at his home and permitted to leave only for work or for matters related to the case. (*Id*. at p. 1712.) The Court of Appeal held that these restrictions did not qualify for custody credit, explaining that "credit is available under section 2900.5 only where the imposed

6

restrictions render the placement akin to confinement in a facility or institution." (*Pottorff*, *supra*, 47 Cal.App.4th at p. 1718, italics omitted.)

*In re Debra S.* (1982) 135 Cal.App.3d 378 (*Debra S.*) refused to award custody credit to a juvenile who was subject to probation conditions that she live at home, attend school daily, participate in therapy and an after-school program, advise her mother of her whereabouts at all times, and observe a 6:00 p.m. curfew. (*Id*. at pp. 385-386.) The court refused the credits because the restrictions were much less strict than those in *Rodgers*, and because the program was not a live-in drug treatment program, which the legislative history indicated the statute was intended to cover. (*Id*. at p. 386.)

Here, the purpose of Hacienda was to restore and rehabilitate men adversely affected by homelessness, gang affiliation, poverty, domestic violence, drug abuse, and alcoholism. It was a year-long, residential live-in program that consisted of daily job training, Bible study, and learning to live the Christian way. All Hacienda residents had to adhere to the rules or be dismissed from the program. The residents were required to attend mandatory prayer sessions and the daily mandatory schedules were regimented from 5:30 a.m. to 11:00 p.m. Other rules restricted radios to only two non-secular stations; required preapproval of all books, music and literature; placed limits on the amount of money a resident could have; required residents to comply with Christ-like conduct and dress code; restricted residents from forming cliques or using street slang or prison language; barred any new relationships with women; and mandated that all hair styles be well-groomed and that residents have no beards and mustaches only of a certain size. For the first 30 days, a resident was not allowed any phone calls and, after the 30

7

days, a resident had to use a designated pay phone during specific hours, and sign in and out when using the phone. A resident could not leave Hacienda's property unless he was with a staff member or had permission, and a failure to adhere to that rule was considered a voluntary dismissal. A resident could leave on a day pass for the purpose of seeing a doctor or parole officer but had to return directly after the appointment; and the resident had to list all the places he was going before leaving, call Hacienda's office when the appointment was finished, and call Hacienda's office if he was going to return later than 5:00 p.m. A resident was allowed visitors after the first 30 days in the program without any disciplinary action and with the approval of the Facility Director. Visitation was limited to Saturdays and Sundays in designated areas only with no more than four visitors per visit. Off campus or weekend passes starting Friday at 5:00 p.m. and ending by returning to Hacienda by 5:00 p.m. Sunday could be "considered every 30 days," and while off campus the resident had to conduct himself consistent with Hacienda's rules and be subject to search upon return. Hence, a resident was allowed off campus or weekend passes after 30 days at Hacienda.

Although there is no question that the regulations and rules at Hacienda were restrictive, the level of supervision and restriction placed on defendant while at Hacienda is vastly different than that experienced by the defendant in *Rodgers*, *supra*, 79 Cal.App.3d 26. In *Rodgers*, as noted above, the defendant was not permitted to leave the facility without an escort for six months, and communication with family members and friends was prohibited for an entire year. (*Id*. at pp. 31-32.) Here, on the other hand, after the first 30 disciplinary free days, a resident could use the phone, go out on a day

8

pass, be eligible for a weekend pass, and receive visits from family members, friends, spouses, and children. The restrictions on defendant's movements and the level of supervision were substantially less than that of the defendant's in *Rodgers* and more than that of the defendant's in *Pottorff* and the minor's in *Debra S.* Moreover, the fact that defendant obtained and used methamphetamine, in violation of his probation, while living in the treatment facility is further evidence of the lack of supervision and restriction on defendant's movements.

As the appellate court in *Ambrose* noted, "it is difficult to conceive of a live-in . . . treatment program that does not include some modification of behavior and supervision"; however, this would not necessarily constitute custody. (*Ambrose*, *supra*, 7 Cal.App.4th at p. 1922.)

We conclude the trial court's factual determination that defendant's time in Hacienda was not custodial is supported by substantial evidence, with the exception of the first 30 days where defendant was precluded from leaving the residential facility, making phone calls, or having visitors. Consequently, defendant is entitled to an award of an additional 30 days of credit pursuant to section 2900.5.

III

DISPOSITION

The judgment is modified to reflect that defendant is awarded an additional 30 days of credit pursuant to section 2900.5. The trial court is directed to file an amended abstract of judgment reflecting this modification and to forward the amended abstract to

9

the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.