Filed 12/21/21  P. v. Pascoe CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B309439 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA072850) |
| v. | |
| MICHAEL EUGENE PASCOE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daviann L. Mitchell, Judge.  Affirmed.

Evan D. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Michael Eugene Pascoe used controlled substances and failed to attend domestic violence classes, in violation of the terms of his probation imposed following his plea of no contest to a felony charge of injury upon a dating partner. (Pen. Code, § 273.5, subd. (a).)[1]  The trial court revoked probation and imposed a prison sentence.  Appellant now contends the trial court abused its discretion in not reinstating probation, because it had not fully considered his addiction and inability to afford the classes.  He also contends that he should be awarded custody credit for the time he voluntarily remained at a residential treatment program beyond the probation-mandated period.

These contentions are without merit.  The trial court properly revoked probation, as his violation of probation was due to willfulness and/or irresponsibility.  Moreover, there exists no authority that mandates the award of custody credit based on voluntary self-placement in a rehabilitative residential program. As such, appellant's contentions on appeal must be rejected and we affirm.

# BACKGROUND

In December 2017, police officers responding to a domestic violence call found appellant "jump[ing] on top of the victim." The victim, who was in a dating relationship with appellant, reported that he had pushed her repeatedly to make her fall, placed himself on top of her, compressed her chest with his hands, and "bear hugged" her.  She suffered discomfort and immediate redness to her chest area.

---

[1]    Undesignated statutory references herein are to the Penal Code.

2

After pleading no contest to a felony charge of injury upon a dating partner in violation of section 273.5, subdivision (a), appellant, on January 31, 2018, was placed on formal probation for five years with terms that included 180 days of county jail and a 52-week domestic violence treatment program (DVRP). In February 2018, appellant indicated to the trial court that he was accepted to a sober living house to provide a residential treatment program. The trial court ordered him to first complete 180 days in county jail before beginning a six-month residential treatment program. The following month, the trial court ordered appellant's release on the condition that he enroll in a sober living house program.

In May 2019, the trial court ordered appellant, who remained at his sober living house as an employee, to begin compliance with the probation requirement of enrolling in a DVRP. In December 2019, the trial court found appellant was not in compliance with his DVRP obligations but excused his non-compliance due to his financial difficulties. It directed him to confer with probation to identify free programs that might be available to bring him into compliance. At appellant's February 2020 court date, the court received proof of appellant's enrollment in a DVRP.

On August 21, 2020, the trial court found appellant not in compliance with the terms of his sentence and revoked probation. However, it released appellant on his own recognizance and ordered him to attend the previously mandated DVRP sessions, whether online or in-person. The court stated that it would reinstate probation if appellant's October 2020 probation report was positive.

On October 20, 2020, the probation department reported that appellant attended three DVRP sessions, but had tested positive for marijuana and prescription drugs. The trial court did not reinstate probation and ordered appellant to undergo a prompt re-test for drugs and furnish a valid prescription for prescription drugs found in his system. According to a supplemental probation report dated November 2, 2020, appellant did not comply with his testing obligations and admitted to his probation officer that he had been under the influence of drugs while in court at the prior hearing. Accordingly, on November 6, the trial court remanded appellant to custody pending hearing on his probation violations. Such hearing proceeded on November 20 and 24, 2020.

During the hearing, the Deputy Probation Officer (PO) testified that in February 2020, appellant tested positive for hydrocodone, marijuana, metabolite, and oxycodone and that in August 2020, appellant admitted to the PO that he had been dismissed from his DVRP due to absences. The PO verified with the program that appellant indeed was discharged for non-attendance after having attended only three classes (not the 17 that appellant had claimed). The PO further testified that appellant submitted documentation that he had re-enrolled in the domestic violence classes in October 2020 but subsequently failed to provide proof of attendance. The PO called the instructor, who confirmed that appellant had not been attending. On October 22, 2020, in a call to the PO about drug testing, appellant admitted that he was addicted to pills and had been under the influence while in court a few days before. The PO told him to check himself into a drug rehabilitation center in Tarzana. Appellant underwent a drug test at the Tarzana center on

4

November 3, 2020 which came back positive for opiates and fentanyl. The PO recommended probation be revoked and that appellant be sentenced to prison.

Following the evidentiary hearing, the trial court found appellant to be in violation of probation for failing to complete the DVRP, testing positive for drugs and marijuana, being under the influence of a controlled substance, testing positive for opiates, and lying to the PO regarding his compliance with the DVRP requirement.

During sentencing following revocation, Paul Dumont from appellant's sober living house testified that appellant had recently been using drugs, but it was due to addiction. Appellant had asked Dumont to help him check into the treatment center in Tarzana because appellant knew he needed help. During sessions with Dumont, appellant was regularly tested and every time he tested negative for drugs. Appellant at the time had actually volunteered in the organization's homeless outreaches. Dumont testified that appellant could be subject to detoxification while in custody and thereafter he would be amenable to treatment in a community-based setting.

Based on the testimony and the probation reports, the court found that appellant was not amenable to continued probation. The court sentenced appellant to an upper term of four years and awarded appellant 413 days of custody credit, consisting of 395 days of actual custody and 18 days of conduct credit. The 395 days included the required 180 days served in a residential program.

Appellant appealed from the judgment.

## DISCUSSION

## I. The Trial Court Properly Exercised Its Discretion in Not Reinstating Probation

Appellant first contends that the trial court abused its discretion when it failed to reinstate appellant's probation. He argues the trial court failed to properly consider his addiction and his success in the residential treatment program. This contention is without merit. Given appellant's repeated failure to comply with probation conditions, including to stay drug-free after his treatment, the trial court acted well within its discretion in declining to reinstate probation.

"[U]pon finding a violation of probation and revoking probation, the court has several sentencing options. It may reinstate probation on the same terms, reinstate probation with modified terms, or terminate probation and sentence the defendant to state prison." (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420.) The trial court's decision to reinstate probation or to impose the original sentence is reviewed for an abuse of discretion. (*People v. Downey* (2000) 82 Cal.App.4th 899, 909; *People v. Medina* (2001) 89 Cal.App.4th 318, 323.) When "the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination of probation and imposition of a prison sentence is no abuse of discretion." (*People v. Kingston* (2019) 41 Cal.App.5th 272, 278.)

Here, the record shows irresponsible or willful behavior. Appellant may have done well initially when he completed the residential treatment program, and the trial court acknowledged his early success. Nonetheless, appellant relapsed once he was out of the program. Contrary to appellant's contention, the court

6

acknowledged addiction as a deep-seated problem, but given appellant's continued relapses, the court believed any treatment should continue in the confines of a custodial environment. The irresponsible behavior on the part of appellant was particularly acute, given that appellant even appeared in court under the influence and later lied about it. The court properly found irresponsibility for only completing seven DVRP classes during a span of two years. Appellant presented no evidence that every absence for almost two years was caused by involuntary addiction, as opposed to his poor choices and priorities. It was not disputed that appellant, after being dismissed from one DVRP, re-enrolled in October 2020, but thereafter continued to be absent several times. He also repeatedly failed to submit proof of attendance to the PO before testing positive for narcotic substances.

Appellant highlights his alleged inability to pay as justification for not attending DVRP classes. That problem surfaced early in the probationary period, and the trial court at that point did reinstate probation after appellant's counsel represented that appellant was going to receive funds to pay for the program. But in later review hearings appellant failed to raise inability to pay as the reason for noncompliance. The trial court cannot be faulted for ignoring an excuse that appellant no longer made.

The question before us is not whether the trial court was *compelled* to revoke probation. It is whether it was an *abuse of discretion* to do so. The record before the trial court was replete with conduct by appellant fully justifying probation revocation as a permitted choice.

## II. The Trial Court Properly Calculated Custody Credits

Appellant was ultimately ordered to spend 180 days in a residential treatment program as one of his probation conditions. He chose to remain in the program for 484 days. Appellant argues that because he spent 484 days at the community residential program, and the program had been ordered by the court pursuant to a conviction, he was entitled to receive credit for the entire 484 days he remained rather than just the 180 days the court ordered. Appellant is incorrect as a matter of law.

Section 2900.5, subdivision (a), provides that a convicted person "shall be credited" with credit against his or her sentence of imprisonment for all days spent in custody, including time spent in a "rehabilitation facility . . . or similar residential institution," "including days served as a condition of probation in compliance with a court order." (§ 2900.5, subd. (a).) The provisions of section 2900.5 "apply to custodial time in a residential treatment facility as well as straight county jail time." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 318.)

Entitlement to credits for time spent in a residential treatment facility "depends on whether such participation was a condition of probation for the same underlying criminal conduct." (*People v. Davenport* (2007) 148 Cal.App.4th 240, 245.) " 'It is not the procedure by which a defendant is placed in a facility that determines the right to credit, but the requirement that the placement be custodial, and that the custody be attributable to the proceedings relating to the same conduct for which the defendant has been convicted. [Citations.]' " (*Ibid.*) A defendant bears the burden of demonstrating his or her entitlement to presentence custody credits. (*People v. Shabazz* (2003) 107 Cal.App.4th 1255, 1258.)

The People do not question that appellant's residential treatment program qualified as custodial treatment. (See *People v. Rodgers* (1978) 79 Cal.App.3d 26, 31.) But they dispute his claim that when he voluntarily stayed in the program longer than mandated by the court, that he should also receive custody credit for the voluntary portion. Since entitlement to credits for residential treatment depends on whether the treatment "was a condition of probation" under *People v. Davenport, supra*, 148 Cal.App.4th at page 245, appellant's burden is to show there was a condition of probation for him to serve 484 days of residential treatment. The record only shows that he was ordered to do 180 days. He was free to walk away from the residential treatment program after that without being in violation of probation. His participation in the program was a "condition of probation" only to the extent failing to comply could be a violation of probation. If the rule were otherwise, a defendant initially sentenced to electronic monitoring could claim custody credits for all the subsequent days during probation when he chose to stay home, as purported voluntary "house arrest."

Appellant contends that *People v. Sylvestry* (1980) 112 Cal.App.3d Supp. 1 (decided by an appellate department of the Superior Court), supports his contention that he was entitled to additional custody credits for the voluntary portion of his treatment program. But the facts of *Sylvestry* did not involve *voluntary* residence in a treatment program. The trial court in *Sylvestry ordered* the defendant to reside in a residential treatment program. (*Id.* at p. 5.) There was nothing voluntary about his presence in the program; he was compelled to be in the program by the court. *Sylvestry* simply stands for the proposition that where a defendant complied with a pre-trial order to

undergo a rehabilitative program in a custodial residential facility, that period of time is to be calculated as presentence custody time within the meaning of section 2900.5. (See *Sylvestry*, *supra*, 112 Cal.App.3d Supp. at pp. 4, 9.) Appellant's reading of *Sylvestry* was further undercut by the decision in *People v. Tafoya* (1987) 194 Cal.App.3d Supp. 1, 5, where the court stated, "[c]ontrary to defendant's assertion, [*Sylvestry*] does not stand for the proposition that a defendant who *places himself* in a rehabilitation facility will be given time credit under section 2900.5." (Italics added.) Appellant was not entitled to additional custody credits under the actual holding in *Sylvestry*.

The trial court did not abuse its discretion in declining to reinstate probation. Nor was the court required to grant custody credits for appellant's voluntary continuation in residential treatment.

## DISPOSITION

The judgment is affirmed.



HARUTUNIAN, J.[*]

We concur:



GRIMES, Acting P. J.                    WILEY, J.

_____

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10