[No. A067363. First Dist., Div. Three. Aug. 6, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HARVEY POTTORFF, Defendant and Appellant.

## COUNSEL

Nolan & Armstrong, Thomas J. Nolan and Daniel L. Barton for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Jeffrey Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

McGUINESS, J.*—James Harvey Pottorff appeals from the sentence he received after pleading no contest to 19 counts of committing a lewd or lascivious act with a child. He contends that the court erred in refusing to

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

award him presentence custody credit for the time he spent on bail subject to certain restrictions. We disagree. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

After appellant's arrest on December 1, 1993, the San Mateo District Attorney charged him by complaint with 12 counts of committing a lewd or lascivious act with a child (Pen. Code, § 288, subd. (a)),[1] and alleged that he was ineligible for probation because he occupied a position of special trust with the victims (former § 1203.066, subd. (a)(9)). The municipal court set bail at $200,000. On December 8, the district attorney filed an amended complaint alleging 38 counts under section 288 and appellant's probation ineligibility under former section 1203.066, subdivision (a)(9), as to 37 of the counts.

At a December 8, 1993, bail status hearing, the prosecution asked that the court increase bail to at least $400,000 in light of the additional charges. The court rejected this request and permitted appellant to post bail by way of property bond. In so doing, the court imposed additional conditions on appellant's release, including the following: "I want to have the O.R. [Own Recognizance] Project involved in this. I want regular contact made with [appellant] and when bail is posted, [appellant] is either going to reside at his present address or at the home of his mother, and he may not reside in any other place." The court later continued: "You may not be in any place other than your place of residence, the place of employment, or a place related to the preparation of this case or pertaining to these charges and these issues. You must remain at home unless you are engaged in business pertaining to this case or in your employment." Appellant accepted these conditions.

Appellant remained on bail subject to these conditions until the court modified them on March 16, 1994.[2] At that time, the court granted appellant's motion to have two supervised visits with his natural daughter through the family visitation center. The court later denied appellant's request for unsupervised visitation with his daughter. However, on April 15, 1994, it again modified appellant's bail conditions by allowing him to attend counseling.

On May 18, 1994, appellant pleaded no contest to 19 of the charged counts and admitted the truth of 1 probation ineligibility allegation. As

---

[1] All further statutory references are to the Penal Code.

[2] During the interim, appellant waived preliminary examination, the magistrate held him to answer on all counts, the district attorney filed an information conforming to the amended complaint, and appellant pleaded not guilty to all charges and denied all special allegations.

part of a plea agreement, the court was to dismiss the remaining charges and consider imposing "a sentence range of 15 to 24 years" in prison. On July 22, 1994, the court imposed a 20-year prison sentence and remanded appellant into custody. In imposing sentence, the court rejected appellant's claim that he should receive custody credit pursuant to section 2900.5 for the time he was released on bail.

Appellant then formally moved for an award of further custody credit under section 2900.5. In opposing the motion, the prosecution submitted the declaration of a deputy district attorney recounting his conversation with Debbie Keller, the O.R. Project (Project) representative who monitored appellant during his bail release.[3] Keller told the deputy district attorney the following: (1) appellant "was required to call into the [Project] twice a week and to personally appear at the [Project] once a month"; (2) appellant "was very reliable" and "never missed a phone call or an appearance"; (3) because she did "not have the physical ability to go out and visit her various defendants on a daily basis since she has 80 cases, and in part because [appellant] was so reliable, she never went out to personally check to see if he was where he was supposed to be"; (4) she twice "called [appellant's] mother's house to see if [appellant] was there," and both times she "talked to [appellant's] mother and was told that he was there"; (5) appellant once called her "and asked her if he could go out and have dinner with his friends, and she told him that he could not"; (6) appellant informed her "when he was going to the dentist"; and (7) appellant "had a job working at a ranch" that she believed appellant's mother owned, and he said that he went out to pick things up as part of his job. After hearing, the court denied the motion. This timely appeal followed.

DISCUSSION

Appellant's sole contention on appeal is that the court erred in refusing to award further custody credit under section 2900.5 for the time he was on bail release. Subdivision (a) of section 2900.5 provides in relevant part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, similar residential institution, or home detention program, all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." Appellant does not argue that he was participating in a "home detention program" under section 2900.5, but asserts that principles of equal protection require that he receive custody credits under the section because

---

[3]The record does not indicate that appellant made a hearsay objection to this declaration.

the terms of his release were no less restrictive than the terms of such programs.

In making his argument, appellant principally relies on *People v. Lapaille* (1993) 15 Cal.App.4th 1159 [19 Cal.Rptr.2d 390] (*Lapaille*). There, the municipal court released defendant Lapaille, who was charged with drug-and-weapons-related offenses, on his own recognizance on condition that he not leave his residence except to visit his lawyer and make court appearances. (*Id.* at p. 1162.) The trial court later modified Lapaille's release terms by allowing him to leave his home for approximately 30 minutes in the morning and afternoon to accompany his daughter to and from the bus stop. (*Id.* at p. 1163.) Lapaille sought custody credit under section 2900.5 for the time he spent confined to his residence, arguing that his confinement was part of a "home detention program" under subdivision (a) of that section. (*Lapaille, supra,* 15 Cal.App.4th at pp. 1163-1164.) On appeal, the court disagreed, finding "[t]hat in referring to 'home detention programs' in [section 2900.5], the Legislature meant only electronic home detention programs established under section 1203.016, in which the prisoner is permitted to be at his or her home but must wear an electronic tracking device at all times, and submit to other statutory restrictions . . . ."[4] (*Lapaille, supra,* 15 Cal.App.4th at p. 1165.)

However, *Lapaille* further held that principles of equal protection required that Lapaille receive custody credit under section 2900.5 because he "was subject to restraints at least as confining as those placed on persons in electronic home detention programs, so that his house arrest was just as 'custodial.' " (*Lapaille, supra,* 15 Cal.App.4th at p. 1169.) The court based its conclusion on the following factors: "The trial court ordered [Lapaille] to remain at his home, except for visits to his lawyer and court appearances. At some time during his lengthy home confinement, the [trial] court gave him permission to leave his home to walk his daughter to and from the school bus. The probation department or release clerk called [Lapaille] to verify that he was complying with his confinement. There is no indication that [Lapaille] ever left his home to attend medical or dental appointments, or to participate in any counseling sessions. He was on complete disability due to his heart condition, and thus did not work." (*Ibid.*) Comparing Lapaille's confinement to that of participants in electronic home detention programs (hereafter section 1203.016 participants), the court found the "only real difference[]" to be the method for verifying a defendant's whereabouts; the

---

[4]Appellant does not contest *Lapaille*'s conclusion in this regard. In any event, having reviewed the statutory history of section 2900.5 in considering this appeal, we agree with *Lapaille*'s holding that the phrase "home detention program" in section 2900.5 refers only to electronic home detention programs under section 1203.016.

latter involved electronic tracking, while the former involved "telephone calls to the residence." (*Lapaille, supra,* 15 Cal.App.4th at p. 1170.) The court concluded that this "procedural difference[]" was not a legitimate basis "for treating [Lapaille] differently from those placed in electronic home detention programs . . . ."[5] (*Ibid.*) Citing *Lapaille,* appellant argues that he is entitled to further custody credit as a matter of equal protection.

■ The basic principle of equal protection is "that persons similarly situated with respect to the legitimate purpose of the law [must] receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) This principle, however, "does not require things which are different in fact or opinion to be treated in law as though they were the same." (*Tigner* v. *Texas* (1940) 310 U.S. 141, 147 [84 L.Ed. 1124, 1128, 60 S.Ct. 879, 130 A.L.R. 1321].) "Neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution (art. I, § 7; art. IV, § 16) precludes legislative classification with respect to persons who are different. [Citation.]" (*People* v. *Jacobs* (1984) 157 Cal.App.3d 797, 802 [204 Cal.Rptr. 234].) Accordingly, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. [Citation.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], fn. omitted.) Absent this showing, appellant cannot prevail on his claim.

■ Applying these precepts, we reject appellant's equal protection claim because he is not similarly situated to section 1203.016 participants with respect to the legitimate purpose of the law. ■ Section 2900.5 has a "dual legislative purpose of 'eliminat[ing] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts' [citation] and equalizing the actual time served in custody for given offenses. [Citation.]" (*In re Atiles* (1983) 33 Cal.3d 805, 812 [191 Cal.Rptr. 452, 662 P.2d 910], overruled on other grounds in *In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].) The statute " '. . . reflect[s] the basic philosophy that when a person is incarcerated he is being punished by the reality of incarceration. . . .' " (*People* v. *Riolo* (1983) 33 Cal.3d 223, 228 [188 Cal.Rptr. 371, 655 P.2d 723].) ■ Thus, to show that he is similarly situated with respect to these purposes, appellant must show that "his confinement to his home was as custodial" as the confinement of section 1203.016 participants. (*Lapaille, supra,* 15 Cal.App.4th at p. 1169.)

---

[5]The court also found irrelevant the fact that electronic home detention was based "on a statutory program," while Lapaille's detention was "based at home under O.R. release." (*Lapaille, supra,* 15 Cal.App.4th at p. 1170.)

We agree with respondent that appellant's confinement was not as custodial as that of section 1203.016 participants. Initially, the confinements involve different residential limitations and methods of compliance monitoring. Here, the court simply required appellant generally to "remain at home" and have "regular contact" with the Project. As implemented, the latter condition required appellant to contact the Project only twice a week by telephone and once a month in person. By contrast, a participant in an electronic home monitoring program must "be supervised" (§ 1203.016, subd. (j)(2)), and must, *at minimum*, abide by the following restrictions: (1) "[R]emain within the interior premises of his or her residence during the hours designated by the correctional administrator";[6] (2) ". . . admit any person or agent designated by the correctional administrator into his or her residence at any time for purposes of verifying [his or her] compliance with the conditions of . . . detention"; and (3) ". . . agree to the use of electronic monitoring or supervising devices for the purpose of helping to verify his or her compliance with the rules and regulations of the home detention program." (§ 1203.016, subd. (b)(1-3).)[7] Moreover, the electronic devices may be used to monitor or record "a conversation between the participant and the person supervising the participant . . . for the purposes of voice identification." (§ 1203.016, subd. (b)(3).) The participant must also agree that the correctional administrator "may, without further order of the court, immediately retake [him or her] into custody to serve the balance of his or her sentence if the electronic monitoring or supervising devices are unable . . . to . . . perform their function . . . , [or] if [he or she] fails to remain within the place of home detention . . . ." (§ 1203.016, subd. (b)(4).) Section 1203.016, subdivision (c), further authorizes the supervising peace officer, "under general or specific authorization of the correctional administrator, and without a warrant of arrest, [to] retake the [participant] into custody to complete the remainder of the original sentence" upon ". . . reasonable cause to believe that the participant is not complying with the rules or conditions of the program, or that the electronic monitoring devices are unable to function properly . . . ." These conditions restrict the freedom and privacy of section 1203.016 participants far more than the court's conditions restricted appellant's freedom and privacy.[8]

---

[6]The correctional administrator is "the sheriff, probation officer, or director of the county department of corrections." (§ 1203.016, subd. (h)(1).)

[7]Section 1203.016, subdivision (b), authorizes a county board of supervisors to prescribe additional rules and regulations for electronic home detention programs and requires participants to comply with those rules and regulations.

[8]That appellant could leave his residence to work, see his dentist, and attend counseling does not necessarily distinguish him from section 1203.016 participants. An electronic home detention program administrator may authorize program participants to leave their residences "to seek and retain employment in the community, attend psychological counseling sessions

Section 1203.016 also imposes on participants additional penal consequences for failures to observe program release terms.[9] Under section 1203.016, subdivision (f), "unauthorized departures from the place of home detention are punishable" as escapes under section 4532. Section 4532, subdivision (a), defines a punishable escape to include a section 1203.016 participant's "willful failure . . . to return to the place of confinement not later than the expiration of a period during which . . . he or she is authorized to be away from that place of confinement . . . ." Such escapes carry penal consequences of up to one year in county jail or more than one year in prison.[10] (§ 4532, subd. (a).) Appellant, by contrast, did not face punishment for escape if he violated the restrictions the court imposed.[11] The differences that we have identified establish that the confinement of section 1203.016 participants is significantly more custodial than appellant's, and that appellant's equal protection claim fails because he is not similarly situated to such persons. (Cf. *People* v. *Thomas* (1977) 19 Cal.3d 630, 639 [139 Cal.Rptr. 594, 566 P.2d 228] [citing fact that escapes from narcotics commitment are separately punishable with a prison term in finding that beyond a reasonable doubt standard applies in commitment proceedings].)[12]

Finally, we disagree with appellant that he was in "custody" within the meaning of section 2900.5 simply because he was subject to "constraints not

or educational or vocational training classes, or seek medical and dental assistance." (§ 1203.016, subd. (f).)

[9]Notably, *Lapaille, supra*, 15 Cal.App.4th at pages 1168-1170, did not consider this factor in reaching a conclusion contrary to ours. The court identified only what it characterized as "procedural differences" between Lapaille's detention and that of section 1203.016 participants. (*Lapaille, supra*, 15 Cal.App.4th at p. 1170.) The additional criminal penalty to which section 1203.016 participants are subject is not simply a procedural difference. On the other hand, the court did consider that Lapaille "was on complete disability due to his heart condition . . . ." (*Lapaille, supra*, 15 Cal.App.4th at p. 1169.) However, under section 2900.5, only *court-imposed* confinement constitutes custody. (*People* v. *Tafoya* (1987) 194 Cal.App.3d Supp. 1, 4-5 [239 Cal.Rptr. 458].)

[10]The prison options are a term of one year and one day for escapes that are "not by force or violence," and a term of two, four, or six years for escapes that are "by force or violence," to be served consecutively to the underlying sentence the person is then serving. (§ 4532, subd. (a).)

[11]Nor would a failure by appellant to observe the restrictions have been separately punishable as a violation of section 1320.5, which applies to those who willfully fail to appear in court in order to evade the court's process.

[12]Appellant urges that we must review his equal protection claim under a strict scrutiny standard requiring a "compelling governmental interest" to justify the denial of custody credits for his home detention. Before considering the issue of the proper standard for constitutional review of an equal protection claim, a court must address the threshold question of whether or not the person claiming unequal treatment is similarly situated with other persons subject to the law or government action in question. We have concluded that appellant is not similarly situated with section 1203.016 participants for equal protection purposes. Therefore, we need not address the question of the proper standard for constitutional review of the distinction made between appellant and section 1203.016 participants with regard to custody credits.

shared by the general public." ██ As the court explained in *People* v. *Reinertson* (1986) 178 Cal.App.3d 320, 327 [223 Cal.Rptr. 670], in denying a claim similar to appellant's: "[T]he concept of custody generally connotes a facility rather than a home. It includes some aspect of regulation of behavior. It also includes supervision in a structured life style."[13] Citing the Legislature's subsequent amendment of section 2900.5, subdivision (a), to include section 1203.016 programs, appellant challenges *Reinertson*'s observation that the concept of custody generally connotes a facility. We agree that, in light of the amendment, the mere fact detention occurs at home does not preclude an award of credit. However, the lesson of *Reinertson* is that credit is available under section 2900.5 only where the imposed restrictions render the placement *akin* to confinement in a facility or institution. Appellant's home detention no more met this requirement than did the defendant's home detention in *Reinertson*.[14] (See *In re Debra S.* (1982) 135 Cal.App.3d 378, 385-386 [185 Cal.Rptr. 219] [refusing to award custody credit to juvenile subject to probation conditions that she live at home, attend school daily, participate in therapy and an after-school program, advise her mother of her whereabouts at all times, and observe a 6 p.m. curfew].)

The legislative history of section 2900.5 and its judicial application support this interpretation of the custody requirement. As originally enacted, section 2900.5 awarded credit only to defendants who had been "in custody

---

[13]In *People* v. *Reinertson, supra,* 178 Cal.App.3d at pages 324-325, the defendant sought custody credit for time he spent on probation subject to the condition that he remain at home at all times except for purposes of employment, counseling and education.

[14]Appellant's argument traces back to our decision in *People* v. *Rodgers* (1978) 79 Cal.App.3d 26 [144 Cal.Rptr. 602] (*Rodgers*). There, we discussed an arguably broader definition of "custody" in holding that section 2900.5 entitled defendant to credit for time spent in a residential treatment program. (*Rodgers, supra,* 79 Cal.App.3d at pp. 30-32.) However, in that case, the People had stipulated that the facility in question was "a 'halfway house, rehabilitation facility . . . or similar institution' within the meaning of section 2900.5." (*Rodgers, supra,* 79 Cal.App.3d at p. 29.) Thus, interpretation of the statute as to *home* detention was simply not at issue. Also, in *Rodgers,* we borrowed an "expanded" concept of custody from habeas corpus law, under which "anyone subject to restraints not shared by the 'public generally'" may seek the writ, including "persons free on bail, on their own recognizance, on parole, on probation, and the like. [Citations.]" (*Id.* at p. 31, italics omitted.) This expanded concept is obviously too broad as to section 2900.5; everyone released on bail is subject to some restraint that the general public does not share and thus would be entitled to credit. Indeed, federal courts interpreting the federal custody credit statute have consistently refused to borrow from habeas corpus law in defining the term "custody." (*Dawson* v. *Scott* (11th Cir. 1995) 50 F.3d 884, 888-889, fn. 8; *U.S.* v. *Insley* (4th Cir. 1991) 927 F.2d 185, 187; *U.S.* v. *Woods* (10th Cir. 1989) 888 F.2d 653, 655; *Ramsey* v. *Brennan* (7th Cir. 1989) 878 F.2d 995, 996; *U.S.* v. *Mares* (5th Cir. 1989) 868 F.2d 151, 152; *Villaume* v. *United States Dept. of Justice* (8th Cir. 1986) 804 F.2d 498, 499.) Finally, in *Rodgers,* we relied in part on legislative history specifically showing an intent to award credit for time spent in live-in drug rehabilitation programs. (*Rodgers, supra,* 79 Cal.App.3d at pp. 32-33.) For all of these reasons, we conclude that *Rodgers* does not require a different result in this case.

in any . . . county jail . . . ." (Stats. 1971, ch. 1732, § 2, p. 3686.) The statute's purpose was "to eliminate the unequal treatment suffered by indigent defendants who, because of their *inability to post bail*, served a longer overall confinement than their wealthier counterparts. [Citations.]" (*In re Rojas* (1979) 23 Cal.3d 152, 156 [151 Cal.Rptr. 649, 588 P.2d 789], italics added.) Thus, the Legislature enacted section 2900.5 to address pretrial "incarceration" (*In re Watson* (1977) 19 Cal.3d 646, 651 [139 Cal.Rptr. 609, 566 P.2d 243]), and to "reflect the basic philosophy that when a person is *incarcerated* he is being punished by the reality of *incarceration*." (*People* v. *Williams* (1975) 53 Cal.App.3d 720, 723 [125 Cal.Rptr. 901], italics added.) The statute embodied a "policy decision . . . that for purposes of credit, precommitment detention should be equated with postcommitment *imprisonment*." (*In re Kapperman* (1974) 11 Cal.3d 542, 547 [114 Cal.Rptr. 97, 522 P.2d 657], italics added.)

"Recognizing that defendants may be in pretrial custody *in institutions* other than 'jails' for reasons other than indigency, the Legislature and the courts . . . extended subdivision (a) of the statute to include a broad range of custodial situations for which credit must be granted upon conviction. [Citations.]" (*In re Rojas, supra*, 23 Cal.3d at p. 156, italics added.) Thus, in their early application of the statute, courts emphasized the fact of a defendant's presentence custody "regardless of the particular locale, institution, facility or environment of his *incarceration*." (*In re Watson, supra*, 19 Cal.3d at pp. 651-652, italics added.) Consistent with these rulings, the Legislature amended the statute in 1976 by expanding its coverage to defendants who were "in custody, including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, or similar *institution* . . . ." (Stats. 1976, ch. 1045, § 2, p. 4665, italics added.) Two years later, the Legislature added "juvenile detention facilit[ies]" to this list and restricted the final, catch-all category to "similar residential institution[s] . . . ." (Stats. 1978, ch. 304, § 1, p. 632.) Through enactment of the statute and its amendments, "the Legislature addressed situations where defendants were *confined* to a facility (be it penal or rehabilitative) by court order." (*People* v. *Tafoya, supra*, 194 Cal.App.3d at p. Supp. 4, italics original.) Given the restrictive characteristics of section 1203.016 programs, including the constant electronic monitoring and the prospect of punishment for escape, the Legislature's express inclusion of such programs in section 2900.5 evinces no intent to expand the section's coverage beyond its historical limits, i.e., placements that are akin to confinement in a facility or institution.[15] As we have already explained, appellant's confinement does not meet this test. (See *People* v. *Ramos* (1990) 138

---

[15]Citing section 2900.5 and section 2 of the chapter that enacted section 1203.016 (Stats. 1988, ch. 1603, § 2, pp. 5803-5804), appellant asserts that "[t]he Legislature has recognized

Ill.2d 152 [149 Ill.Dec. 273, 561 N.E.2d 643, 644-648] ["custody" under credit statute does not include home detention during pretrial release on bond]; *State* v. *Pettis* (1989) 149 Wis.2d 207 [441 N.W.2d 247, 248-250].)

The judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 1996. Chin, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.

---

home detention programs as a safe and cost-effective alternative form of *incarceration.*" This assertion supports our conclusion that the Legislature's inclusion in section 2900.5 of electronic home detention programs did not expand the meaning of "custody" under that section beyond placements that are akin to confinement in a facility or institution. We indicate no opinion as to whether, absent this express legislative inclusion, section 1203.016 participants would be in "custody" for purposes of section 2900.5.