BILL LOCKYER Attorney General MARJORIE E. COX Deputy Attorney General
THE HONORABLE ERNEST J. LICALSI, DISTRICT ATTORNEY, COUNTY OF MADERA, has requested an opinion on the following question:
Are persons committed to county jail who participate in an electronic monitoring home detention program eligible for good conduct and work credits?
 CONCLUSION
Persons committed to county jail who participate in an electronic monitoring home detention program are eligible for good conduct and work credits.
 ANALYSIS
Persons convicted of certain crimes and committed by a court to county jail may choose to participate in an electronic monitoring home detention program in lieu of serving their sentences by confinement in the county jail. Penal Code section 1203.016[1] provides:
"(a) Notwithstanding any other provision of law, the board of supervisors of any county may authorize the correctional administrator . . . to offer a program under which minimum security inmates and low-risk offenders committed to a county jail or other county correctional facility or granted probation, or inmates participating in a work furlough program, may voluntarily participate in a home detention program during their sentence in lieu of confinement in the county jail or other county correctional facility or program under the auspices of the probation officer.
"(b) The board of supervisors may prescribe reasonable rules and regulations under which a home detention program may operate. As a condition of participation in the home detention program, the inmate shall give his or her consent in writing to participate in the home detention program and shall in writing agree to comply with the rules and regulations of the program, including, but not limited to the following rules:
"(1) The participant shall remain within the interior premises of his or her residence during the hours designated by the correctional administrator.
"(2) The participant shall admit any person or agent designated by the correctional administrator into his or her residence at any time for purposes of verifying the participant's compliance with the conditions of his or her detention.
"(3) The participant shall agree to the use of electronic monitoring or supervising devices for the purpose of helping to verify his or her compliance with the rules and regulations of the home detention program. The devices shall not be used to eavesdrop or record any conversation, except a conversation between the participant and the person supervising the participant which is to be used solely for the purposes of voice identification.
"(4) The participant shall agree that the correctional administrator in charge of the county correctional facility from which the participant was released may, without further order of the court, immediately retake the person into custody to serve the balance of his or her sentence if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, if the person willfully fails to pay fees to the provider of electronic home detention services, as stipulated in the agreement, subsequent to the written notification of the participant that the payment has not been received and that return to custody may result, or if the person for any other reason no longer meets the established criteria under this section. A copy of the agreement shall be delivered to the participant and a copy retained by the correctional administrator.
"(c) Whenever the peace officer supervising a participant has reasonable cause to believe that the participant is not complying with the rules or conditions of the program, or that the electronic monitoring devices are unable to function properly in the designated place of confinement, the peace officer may, under general or specific authorization of the correctional administrator, and without a warrant of arrest, retake the person into custody to complete the remainder of the original sentence.
"(d) Nothing in this section shall be construed to require the correctional administrator to allow a person to participate in this program if it appears from the record that the person has not satisfactorily complied with reasonable rules and regulations while in custody. A person shall be eligible for participation in a home detention program only if the correctional administrator concludes that the person meets the criteria for release established under this section and that the person's participation is consistent with any reasonable rules and regulations prescribed by the board of supervisors or the administrative policy of the correctional administrator.
"(1) The rules and regulations and administrative policy of the program shall be written and reviewed on an annual basis by the county board of supervisors and the correctional administrator. The rules and regulations shall be given to or made available to any participant upon request.
"(2) The correctional administrator, or his or her designee, shall have the sole discretionary authority to permit program participation as an alternative to physical custody. All persons referred or recommended by the court to participate in the home detention program pursuant to subdivision (e) who are denied participation or all persons removed from program participation shall be notified in writing of the specific reasons for the denial or removal. The notice of denial or removal shall include the participant's appeal rights, as established by program administrative policy.
"(e) The court may recommend or refer a person to the correctional administrator for consideration for placement in the home detention program. The recommendation or referral of the court shall be given great weight in the determination of acceptance or denial. At the time of sentencing or at any time that the court deems it necessary, the court may restrict or deny the defendant's participation in a home detention program.
"(f) The correctional administrator may permit home detention program participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance. Willful failure of the program participant to return to the place of home detention not later than the expiration of any period of time during which he or she is authorized to be away from the place of home detention pursuant to this section and unauthorized departures from the place of home detention are punishable as provided in Section 4532.
"(g) The board of supervisors may prescribe a program administrative fee to be paid by each home detention participant that shall be determined according to his or her ability to pay. Inability to pay all or a portion of the program fees shall not preclude participation in the program, and eligibility shall not be enhanced by reason of ability to pay. All program administration and supervision fees shall be administered in compliance with Section 1208.2.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(j) It is the intent of the Legislature that home detention programs established under this section maintain the highest public confidence, credibility, and public safety. In the furtherance of these standards, the following shall apply:
"(1) The correctional administrator, with the approval of the board of supervisors, may administer a home detention program pursuant to written contracts with appropriate public or private agencies or entities to provide specified program services. No public or private agency or entity may operate a home detention program in any county without a written contract with that county's correctional administrator. However, this does not apply to the use of electronic monitoring by the California Department of Corrections or the Department of the Youth Authority as established in Section 3004. No public or private agency or entity entering into a contract may itself employ any person who is in the home detention program.
"(2) Program acceptance shall not circumvent the normal booking process for sentenced offenders. All home detention program participants shall be supervised.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .[2]
The question presented for resolution is whether persons committed to county jail who participate in an electronic monitoring home detention program are eligible for good conduct and work credits while serving their sentences. We conclude that they are.
Good conduct and work credits are available in specified circumstances under the terms of section 4019, which states:
"(a) The provisions of this section shall apply in all of the following cases:
"(1) When a prisoner is confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp, including all days of custody from the date of arrest to the date on which the serving of the sentence commences, under a judgment of imprisonment, or a fine and imprisonment until the fine is paid in a criminal action or proceeding.
"(2) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp as a condition or probation after suspension or imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding.
"(3) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp for a definite period of time for contempt pursuant to a proceeding, other than a criminal action or proceeding.
"(4) When a prisoner is confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction.
"(b) . . . [F]or each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp.
"(c) For each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.
"(d) Nothing in this section shall be construed to require the sheriff, chief of police, or superintendent of an industrial farm or road camp to assign labor to a prisoner if it appears from the record that the prisoner has refused to satisfactorily perform labor as assigned or that the prisoner has not satisfactorily complied with the reasonable rules and regulations of the sheriff, chief of police, or superintendent of any industrial farm or road camp.
"(e) No deduction may be made under this section unless the person is committed for a period of six days or longer.
"(f) It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody."
In determining whether a section 1203.016 home detention participant may be granted section 4019 good conduct and work credits, we note first that such a participant is not being confined in a "jail, industrial farm, or road camp" as those terms are employed in section 4019. However, section 4019 also grants credits to persons "committed to" a jail, industrial farm, or road camp. Actual confinement in one of these places is not required.[3] Here, we are given that the section 1203.016 participants have been "committed to a county jail" (§ 4019, subds. (a), (b), (c)) before electing to participate in the home detention program. Is such commitment all that is necessary to be eligible for section 4019 credits?
This question was answered in People v. Wills (1994) 22 Cal.App.4th 1810, where the court concluded that a person not only needs to be "committed to" a jail, industrial farm, or road camp, but also must meet the qualification of being "in actual custody" under the terms of subdivision (f) of section 4019. The court observed:
". . . In a 1982 amendment to section 4019, the Legislature added subdivision (f): `It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody.' (Italics added.) Thus, despite the possibility of a probationer being `committed to' the county jail without actual incarceration and the stated applicability of section 4019 when a probationer is `committed to' county jail, the Legislature did not intend section 4019 credits to benefit those not in actual custody." (Id. at p. 1813.)
In examining the particular county work release program in question, the Wills court ruled that the defendant had not been "in actual custody" since he had simply been living at his girlfriend's home while working at a senior citizen's center. (Ibid.)
Following Wills, then, we must determine whether a person committed to county jail who elects to participate in a section 1203.016 home detention program is "in actual custody" for purposes of section4019, subdivision (f).[4] While some similarities exist between the work release program examined in Wills and the section 1203.016
home detention program (see §§ 4024.2, subd. (c), 1203.016, subd. (c)), significant differences exist between the two. The Legislature has described the residence of a section 1203.016
participant as a "place of confinement." (§ 4532, subd. (a).) If a participant makes "unauthorized departures from the place of home detention" (§ 1203.016, subd. (f)), he or she has committed an "escape" and is guilty of a felony (§ 4532, subd. (a)). Moreover, as pointed out in People v. Lapaille (1993) 15 Cal.App.4th 1159, persons participating in a section 1203.016 program "must remain in the interior of their homes during hours designated by the program administrator, admit the administrator to their homes at any hour to verify compliance with the program, wear an electronic monitoring device, be subject to arrest without a warrant if there is reasonable cause to believe they have violated program rules, and abide by other rules and regulations imposed by county authorities." (Id. at p. 1169.)
The phrase "in actual custody" may, of course, have several different meanings. Does the phrase require that the confinement be in a penal institution rather than a nonpenal setting or be the result of a court order? (See People v. Lapaille, supra, 15 Cal.App.4th at pp. 1172-1173; People v. Tafoya (1987) 194 Cal.App.3d Supp. 1, 4.) In People v. Rodgers (1978) 79 Cal.App.3d 26, 31, the court recognized an "expanded" definition of "custody" in habeas corpus law under which "anyone subject to restraints not shared by the `public generally'" may seek the writ, but federal courts interpreting the federal custody credit statute have consistently refused to borrow from habeas corpus law in defining the term "custody" (see Dawson v. Scott (11th Cir. 1995) 50 F.3d 884,888-889, fn. 8; U.S. v. Insley (4th Cir. 1991) 927 F.2d 185, 187; U.S. v. Woods (10th Cir. 1989) 888 F.2d 653, 655; Ramsey v. Brennan (7th Cir. 1989) 878 F.2d 995, 996; U.S. v. Mares (5th Cir. 1989) 868 F.2d 151,152; Villaume v. United States Dept. of Justice (8th Cir. 1986)804 F.2d 498, 499).
The usual and ordinary definition of the term "custody" was given in People v. Reinertson (1986) 178 Cal.App.3d 320, 327, where the court observed that "the concept of custody generally connotes a facility rather than a home. It includes some aspect of regulation of behavior. It also includes supervision in a structured life style." Most recently, in People v. Pottorff, supra, 47 Cal.App.4th 1709, the court applied this traditional definition of "custody," as expressed in Reinertson, to conclude that a section 1203.016 participant was "in custody." The court reviewed the various requirements of section 1203.016 in finding that participation in a section 1203.016 program was "akin to confinement in a facility or institution." (Id. at pp. 1719-1720, fn. 15.)
Accordingly, we follow Wills in determining that a person "committed to" county jail, without confinement in a jail, industrial farm, or road camp, may be eligible for section 4019 credits if the person is "in actual custody" under the terms of subdivision (f) of the statute. Following Pottorff, we apply the traditional definition of "custody" in determining that participants in a section 1203.016 program are "in actual custody" for purposes of subdivision (f).[5] We find it particularly significant that a person who makes an unauthorized departure from a place of home detention is guilty of the crime of escape, a felony. (§§ 4532, subd. (a), 1203.016, subd. (f); see Toney v. Maryland (2001) 140 Md. App. 690 [782 A.2d 383]; People v. Moncrief (1995) 276 Ill. App.3d 533 [659 N.E.2d 106]; State of Fellhauer (1997)123 N.M. 476 [943 P.2d 123]; State v. Magnuson (2000) 233 Wis.2d 40 [606 N.W.2d 536].)
We conclude that persons committed to county jail who participate in an electronic monitoring home detention program are eligible for good conduct and work credits.
[1] All references hereafter to the Penal Code are by section number only.
[2] Subdivision (a) of section 4532 provides that "a participant in a home detention program pursuant to Section 1203.016, and who thereafter escapes or attempts to escape . . . from the place of confinement in a home detention program pursuant to Section 1203.016, is guilty of a felony. . . ." (See People v. Pottorff (1996)47 Cal.App.4th 1709, 1717.)
[3] "It should be almost unnecessary to point out that in its ordinary sense the word `or' indicates an alternative as `either this or that.' [Citation.]" (Cal-Farm Ins. Co. v. TAC Exterminators, Inc. (1985)172 Cal.App.3d 564, 580; see also Barker Bros., Inc. v. Los Angeles (1938) 10 Cal.2d 603, 606; Citizen Advocates, Inc. v. Board of Supervisors (1983) 146 Cal.App.3d 171, 176.) We are "to give meaning to every word and phrase in the statute" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634) and are not at liberty "`to discard any of its express provisions'" (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1097).
[4] We recognize that the legislative history of the 1982 amendment of section 4019, which added the phrase "in actual custody" (Stats. 1982, ch. 1234, § 7) does not support the Wills court's characterization of the amendment's purpose. The phrase "or committed to" was inserted into section 4019 in 1968 (Stats. 1968, ch. 1033, § 1) and has remained in the statute through its subsequent amendments (Stats. 1969, ch. 380, § 3; Stats. 1971, ch. 438, § 157; Stats. 1975, ch. 309, § 2; Stats. 1976, ch. 286, § 4; Stats. 1978, ch. 1218, § 1; Stats. 1982, ch. 1234, § 7). Subdivision (f) was not intended to add an additional qualification for credit eligibility. Rather, the Legislature's purpose was to correct a calculation error that some courts had been making, nothing more. (See People v. Browning (1991) 233 Cal.App.3d 1410, 1412-1413; People v. Bravo (1990) 219 Cal.App.3d 729, 733-735; see also People v. King (1992)3 Cal.App.4th 882, 885; People v. Gutierrez (1991) 232 Cal.App.3d 1571,1573; People v. Smith (1989) 211 Cal.App.3d 523, 527.) We need not address this conflict between the latter cases and Wills since we conclude that a participant in a section 1203.016 program is "in actual custody" for purposes of subdivision (f).
[5] Given the limited purpose of subdivision (f) as described in footnote 4 above, we do not construe the term "actual" to mean anything more than "existing," "real," and "true" rather than "potential," "hypothetical," "presumed," or "illusory." (See Webster's 3d New Internat. Dict. (1971) p. 22; California Highway Patrol v. Workers' Comp. Appeals Bd. (1986) 178 Cal.App.3d 1016, 1024.) Of course, if the person has not been "confined in or committed to a county jail . . ." and does not qualify under any other eligibility criterion of section4019, the granting of good conduct or work credits would not be authorized by the statute. (See People v. Cook (1993) 14 Cal.App.4th 1467,1469-1470 [defendant conceded that he had not been confined in or committed to a jail, industrial farm, or road camp; court rejected his "equal protection" argument].)