Filed 9/5/25  P. v. Mark CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DALE LIONEL MARK,<br><br>      Defendant and Appellant. | A171290<br><br>(Marin County<br>Super. Ct. No. SC220370A) |

Defendant Dale Lionel Mark appeals from an order terminating his mandatory supervision and sentencing him to county jail for the remainder of his sentence.  His sole challenge on appeal is that the trial court erred in denying his request for 60 days' credit for time spent in a residential treatment facility.  We reverse and remand the matter to allow the trial court to hold an evidentiary hearing to determine whether the treatment facility is "sufficiently restrictive," or "custodial," to entitle defendant to credits pursuant to Penal Code section 2900.5.[1]

## BACKGROUND

In August 2022, the Marin County District Attorney filed a complaint alleging one count of felony burglary of a commercial business (§§ 459, 460, subd. (b)) and felony grand theft of personal property (§ 487, subd. (a)).  The

_____

[1] All further statutory references are to the Penal Code.

1

complaint further alleged defendant had been convicted of 16 prior felonies and two circumstances in aggravation.

In November 2023, defendant pleaded guilty to one count of felony grand theft, and the trial court dismissed the remaining count and allegations pursuant to a *Harvey* waiver.[2] The trial court sentenced him to three years in prison, with four months to be served in actual custody and the remaining two years eight months on mandatory supervision.[3] Defendant received credit for time served and was placed on mandatory supervision that same day, subject to several terms and conditions, including that defendant participate in a substance misuse assessment and if residential treatment is recommended by the assessment, "it is approved by the Court."

Four months later, in March 2024, the Marin County Probation Department filed a petition for revocation of his mandatory supervision, alleging two violations for possession of a controlled substance and drug paraphernalia. The court ordered defendant be assessed for a residential treatment facility. A week later, probation determined defendant was eligible for a residential treatment program (HealthRIGHT 360) and that a bed was available.

At the March 28 hearing, the probation department asked that defendant be released to the HealthRIGHT 360 program and that the trial court order him to complete the program. The court queried why it should do so, and the probation officer responded, "We'd like to maintain his progress in

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

[3] Defendant was sentenced to the upper term of three years in connection with a conviction in Monterey County (case No. 23CR001604), which the court deemed as the principal term, with his two-year midterm sentence in this case (case No. SC220370A) running concurrently.

2

treatment. And if, hypothetically, the defendant did leave, we would file a subsequent mandatory supervision violation."

The prosecutor then expressed concern that if defendant is "ordered by the Court then he's accruing credits for that time in the program. And although the People certainly support him participating in a program, I don't think he should be accruing credits at this point." The prosecutor did not ask the court to ask for a *Johnson*[4] waiver of credits.

Defense counsel asked that defendant "be made releasable to his recovery coach . . . so she can transport him to HealthRIGHT 360 where he has a bed, and I believe that's available now." Counsel made no mention of credits.

The court then asked if there were any objections to him being released to the program, and continued, "I would make it a condition of his release on O.R. [(own recognizance)] that he be required to remain in good standing with that program." Both defense counsel and the prosecution agreed.

Accordingly, the court released defendant on his own recognizance "to a recovery coach for transportation solely to HealthRIGHT 360." As a condition of such release, the court ordered that defendant "lead a law abiding life, attend future court appearances, remain in good standing with that program, and to maintain communication with Probation regarding his treatment."

Defendant was taken to the HealthRIGHT 360 program on March 30, where he remained until May 28.

In June 2024, probation filed an amended petition alleging new and additional grounds for revocation of defendant's mandatory supervision—that he had been discharged from the HealthRIGHT 360 program and had failed

---

[4] *People v. Johnson* (1978) 82 Cal.App.3d 183 (*Johnson*).

to report to probation within 48 hours. The petition further alleged that since entering HealthRIGHT 360, defendant had violated the program's rules multiples times, including by twice leaving the program without permission, "mistreat[ing]" staff, and continuing to use substances.

At the June hearing on the petition, probation asked that defendant be remanded. When the court asked if there was still a bed available for him, probation stated there was not and because of defendant's behavior he is "not welcomed back."

Defendant stated he was currently experiencing homelessness and was "waiting for my bed back at the health center where I was before. I had volunteered to go to the program. That wasn't a court order." HealthRIGHT 360 had also called him "and told [him he] can go today."

After making sure defendant understood he, in fact, was to stay away from both addresses associated with the program, the court recited that defendant denied the allegations of the amended revocation petition, revoked mandatory supervision, and set the matter for a contested hearing the following month.

Two days before the July hearing, probation amended the revocation petition a second time alleging defendant's whereabouts after being discharged from the program had been unknown.

At the hearing, the court asked counsel, "with respect to the petitions and the request for remand," how they would like to proceed.

Defense counsel did not dispute that defendant left the HealthRIGHT 360 program. But she had "looked at the transcript" and remaining in the program "was a condition of his O.R., not his . . . post release community supervision. Specifically, the district attorney [had] argued, and the Court [had] agreed that [defendant] shouldn't receive credits for that." Thus,

4

leaving the program was not a violation of mandatory supervision. As to the failure to report allegation, counsel pointed out defendant had since reported. As to the other allegations of drug use, counsel maintained county jail would not be the best place for defendant given he was now "coming to court," "avail[ing] himself of Probation treatment options," and had "significant health problems."

The court revoked O.R., remanded defendant into custody, and set a new hearing date.

At the August hearing, the prosecutor began by asking the court to find defendant had violated his mandatory supervision by testing positive for substances, a "couple of failures to report," discharge from HealthRIGHT 360, and a GPS violation.

Defense counsel stated, "my only comment on the discharge from the program was that [defendant] was not ordered by the Court to go to the program. Technically it's a failure to report when he left. [¶] And I think, if the Court recalls, and I got the transcript somewhere, intentionally did not place [defendant] into Health Right 360 as a condition of his mandatory supervision because the Court did not wish him to accrue extra credit for that time in Health Right 360. [¶] And I can find the transcript, but I did look it up. So, I don't believe technically the discharge from Health Right 360 is the violation. I believe it's the failure to report thereafter."

The court inquired, "Isn't he required to attend treatment as directed by probation?" Counsel and court then went back and forth on whether defendant "was ordered into the treatment program," and the court ultimately recalled the probation officer to testify. The probation officer stated she informed defendant, on "multiple occasions," "he was being directed by probation to attend and complete the program, that it was part of

his mandatory supervision terms, especially now that we had an assessment with that recommendation."

The court ultimately found defendant violated the terms of his mandatory supervision by failing to comply with the directive to remain at HealthRIGHT 360, being discharged from the program and not reporting to probation within 48 hours, twice testing positive for cocaine, failing to keep his "GPS charged," and failing to report to probation.

The prosecutor then asked the court to sentence defendant to the balance of his mandatory supervision term, 657 days. Defense counsel urged that if the court did so, defendant be given credit for time served but did not argue defendant was entitled to credit.

Defendant then spoke directly to the court, stating he had reached out to two facilities who informed him he should get "recommend[ed]" so he could "get in faster." He had then asked for an assessment, and "this is when the issue came up about the program." Defendant stated he was not in the program "on probation's instruction. It was something I wanted. It was something I discussed with my family. And then I discussed it with her. That's how I got it. It wasn't an order from probation. [¶] And then when I did come to court, they came in and argued with you. Hey, he wanted to go to the program. That's fine with us. But we don't want him to have credits. And I was fine with it because I just wanted to the [*sic*] help with my addiction. That's why I went to the program. [¶] . . . [¶] I asked her. I asked her supervisor. It's not just something that they ordered me to do. I want the help. I needed the help. And I went and got the help. And though I was kicked out of the program . . . I feel that it was a success because I have not used heroin since I OD'd."

6

The court was not persuaded to reinstate supervision and sentenced defendant to the remainder of term in custody.

At this point, defense counsel stated, "I know that I argued essentially the contrary in the transcript [of the prior hearing], but I think [defendant's] position, which I understand, is that he should receive credits for the time for the 60 days good-time credit for the 60 days from March 30th to May 28th of 2024 for the treatment."

The court replied, defendant had not been "ordered into the program by the Court. He was directed into . . . the program [by probation] in order to comply with the condition of mandatory supervision. And he does not get credit for that subsequent failed effort at treatment as directed by probation, but not ordered by the Court. That's the clarification."

## DISCUSSION

Penal Code section 2900.5, subdivision (a) provides, "[i]n all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a . . . rehabilitation facility . . . all days of custody of the defendant, including days served *as a condition of probation in compliance with a court order*, credited to the period of confinement . . . , shall be credited upon his or her term of imprisonment. . . ." (Italics added.)

Thus, "[t]he provisions of Penal Code section 2900.5—entitling a defendant sentenced either to county jail or state prison to credit against the term of imprisonment for days spent in custody before sentencing as well as those served after sentencing as a condition of probation—apply to custodial time in a residential treatment facility." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 318.)

7

The Attorney General repeatedly asserts "[a]ll parties understood that because the trial court was not ordering [defendant] to attend the treatment program, he would not be accruing credit for the time he was there." But he stops short of arguing defendant made a valid *Johnson* waiver or that defendant's participation in the program was voluntary. *Johnson* held "a proper interpretation of Penal Code section 2900.5 permits a defendant to knowingly and intelligently waive the provisions thereof that require all days of custody be credited to his sentence, including any period of imprisonment as a condition of probation." (*Johnson, supra*, 82 Cal.App.3d at p. 188.) Here, no such waiver occurred. (See *People v. Arnold* (2004) 33 Cal.4th 294, 308 [to properly uphold a waiver of a defendant's entitlement to custody credits, the defendant's choice must be knowing and intelligent; "[t]he gravamen of whether such a waiver is knowing and intelligent is whether the defendant understood he was relinquishing or giving up custody credits to which he was otherwise entitled under section 2900.5"].) Although defendant later stated, he was "fine with [not getting credits] because I just wanted . . . help with my addition," he never expressly and knowingly waived his statutory right.

It is well established that "a defendant's *voluntary* stay at a rehabilitation facility does not qualify for custody credits under [section] 2900.5." (*People v. Billy* (2024) 107 Cal.App.5th 246, 263, citing *People v. Davis* (2023) 87 Cal.App.5th 771, 777–778 (*Davis*) [self-admitted stay in residential drug treatment program did not qualify for custody credits under § 2900.5]; *People v. Pottorff* (1996) 47 Cal.App.4th 1709, 1717, fn. 9 [stay must be served pursuant to a court order]; *People v. Tafoya* (1987) 194 Cal.App.3d Supp. 1, 4–5 [voluntary stay in substance abuse program did not qualify for § 2900.5 custody credit].)

It is also well established that a "defendant is entitled to credit if he is released on his own recognizance *on condition* he remain in a *custodial setting.*" (*People v. Darnell* (1990) 224 Cal.App.3d 806, 809 (*Darnell*), italics added).

The Attorney General points out that the express condition of defendant's O.R. was that he "remain in good standing with the [HealthRIGHT 360] treatment program." "Under such an order," says the Attorney General, defendant "could abide by the condition of his release whether he was in a custodial setting or not," and whether defendant's "treatment was residential and, therefore, custodial, was determined by the program coordinators based on their assessment of his needs." Thus, as the Attorney General sees it, defendant was not ordered by the court to enter residential treatment as a condition of being released on his own recognizance.

This is not, however, a complete picture of what occurred. Prior to the O.R. hearing and at the court's directive, probation did an assessment and determined defendant was eligible for a residential treatment program (HealthRIGHT 360) and confirmed a bed was available at that program. At the hearing, probation asked that defendant be released to the HealthRIGHT 360 program and that the court order him to complete the program. When the court asked probation why it should do this, the probation officer stated one of the reasons was, "if . . . the defendant did leave, we would file a subsequent mandatory supervision violation." The court then made "it a condition of his release on O.R. that he be required to remain in good standing with that program" and released defendant "to a recovery coach for transportation solely to HealthRIGHT 360."

9

In short, we cannot agree with the Attorney General's word-parsing assertion that the trial court did not expressly condition defendant's release on his own recognizance on entering a residential treatment program. That was certainly the effect of the terms and conditions of the court's O.R. release. (See *Davis, supra,* 87 Cal.App.5th at p. 778 [noting "sharp contrast" between the defendant's voluntary attendance at program where he could "have walked away" from program without "suffering any repercussions" and the trial court's ordering or conditioning the defendant complete a program and the "potential penal consequence[s]" the defendant would likely have been subject to if he walked away].)

We do agree, however, with the Attorney General's alternative argument—that even if the court effectively ordered him to attend a residential treatment program as a condition of release on his own recognizance—the "record does not establish that his stay there was 'custodial.' " In other words, "the record fails to establish that [his] time in the treatment program was sufficiently restrictive to be considered custodial."

While "custody" is broadly defined and includes facilities such as halfway houses and residential treatment programs, whether a particular facility is sufficiently restrictive so as to amount to "custodial" is a factual question focusing " 'on such factors as the extent freedom of movement is restricted, regulations governing visitation, rules regarding personal appearance, and the rigidity of the program's daily schedule.' " (*People v. Ambrose* (1992) 7 Cal.App.4th 1917, 1921.) " '[T]he concept of custody generally connotes a facility rather than a home,' " and " 'includes some aspect of regulation of behavior' " or " 'supervision in a structured life style.' " (*Id.* at p. 1922.)

10

The record before us is silent as to these salient factors. While defendant faced a violation if he left the program, that does not give any indication about how much his movement would be restricted, how much he would be supervised, or the rigidity of the program's scheduling. Nor do we have any information regarding visitation, personal grooming, or regulation of behavior. Given this we cannot conclude the facility was sufficiently restrictive enough to amount to custodial. Although defendant urges that the record permits sufficient inferences in these respects, he acknowledges that often the inquiry is factual and a limited remand could be appropriate. (*In re Wolfenbarger* (1977) 76 Cal.App.3d 201, 206 ["normal course" is to remand matter to trial court to hold evidentiary hearing to determine if residential program is "custodial in nature"].) [5]

## DISPOSITION

The order is reversed, and the matter is remanded. On remand, the trial court shall hold an evidentiary hearing and determine whether the HealthRIGHT 360 program was "custodial" within the meaning of Penal Code section 2900.5, subdivision (a). If the court concludes that is the case, defendant shall be given credits for his time at the program.

---

[5] Given our determination we need not, and do not, address defendant's alternative contention that the trial court's attempt to circumvent section 2900.5 violated his due process rights.

11

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Smiley, J.

A171290, People v. Mark

12